UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DEBRA LEVON CEOL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:15-CV-315-CCS |
| ) | |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, the Rules of this Court, and the consent of the parties [Doc. 14]. Now before the Court is the Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 15 and 16] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 17 and 18]. Debra Levon Ceol ("the Plaintiff") seeks judicial review of the decision of the Appeals Council's decision, the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On March 28, 2014, the Plaintiff filed an application for disability insurance benefits ("DIB"), claiming a period of disability which began February 6, 2014. [Tr. 175-79]. After her application was denied initially and upon reconsideration, the Plaintiff requested a hearing before an administrative law judge ("ALJ"). [Tr. 125-26]. On October 15, 2014, a hearing was held before the ALJ to review determination of the Plaintiff's claim. [Tr. 35-66]. On December 5,

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

2014, the ALJ found that the Plaintiff was not disabled. [Tr. 18-30]. The Appeals Council granted the Plaintiff's request for review. [Tr. 164-67]. Thereafter, the Appeals Council issued a decision on April 15, 2015, finding that the Plaintiff was not under a disability. [Tr. 1-6]. The Appeals Council adopted the ALJ's findings at steps one, two, and three, as well as adopted the ALJ's findings regarding the Plaintiff's subjective complaints and residual functional capacity ("RFC"). [Tr. 5-6]. At step four, while the ALJ found that the Plaintiff could not perform past relevant work, the Appeals Council concluded that the combination of the Plaintiff's impairments did not preclude the performance of past relevant work, namely that of a military clerk as it is generally performed. [Tr. 6]. Therefore, the Appeals Council ended its analysis at step four of the sequential evaluation, finding that the Plaintiff was not disabled as defined in the Social Security Act. [Id.]. The Appeals Council decision, became the final decision of the Commissioner.

Having exhausted her administrative remedies, the Plaintiff filed a Complaint with this Court on July 23, 2015, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

I. APPEALS COUNCIL/ALJ FINDINGS

Adopting the ALJ's findings through step three of the sequential evaluation, as well as the RFC determination, the Appeal Council's made the following findings:[2]

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since

---

[2] Findings one through five are quoted from the ALJ's decision. Findings six and seven are quoted from the Appeal Council's decision.

May 11, 2011, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairments: degenerative disc disease of the cervical spine and lumbar spine, degenerative facet joint disease of the lumbar spine, obesity, hypertension, degenerative joint disease of the knee, mild pes planus deformity, and hearing loss (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can frequently climb ramps or stairs; she can occasionally climb ladders, ropes, or scaffolds; she can frequently balance, stoop, kneel, or crouch, she can occasionally crawl, she can tolerate noise intensity of moderate level but should avoid situations requiring excellent hearing; and she should avoid concentrated exposure to workplace hazards, such as proximity to moving mechanical parts or working in high exposed places.

6. The limitations on the claimant's ability to perform work-related activities as set forth in [the ALJ's Finding 5] do not preclude the performance of past relevant work as military clerk as it is generally performed. Therefore, the claimant's combination of impairments does not preclude the performance of past relevant work (20 CFR 404.1520(e)).

7. The claimant is not disabled as defined in the Social Security Act at any time through the date of the Administrative Law Judge's decision (December 5, 2014).

[Tr. 4-6, 23-28].

## II. DISABILITY ELIGIBILITY

This case involves an application for DIB. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

3

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); *see* 20 C.F.R. § 404.1505(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. *Id.* The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work

4

available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v.*

5

*Richardson*, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citing *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971)).

## IV. SUMMARY OF THE EVIDENCE

The pertinent evidence relating to the issues on appeal is as follows.

The Plaintiff formerly worked for the US Postal Service and US Army Reserves. [Tr. 40]. She receives disability benefits from her former employers. [*Id.*]. The Plaintiff testified that her primary impairments include chronic pain and swelling in her hands, feet, and knees, chronic low back pain which causes discomfort when bending, difficulty concentrating, and tingling in her ears that cause difficulty with hearing. [Tr. 48, 51, 56].

The Plaintiff received most of her medical care through the U.S. Department of Veterans Affairs ("VA"). The VA assigned a disability rating of 90% due to degenerative disc disease of the cervical and lumbar spine, osteoarthritis of the knees, and degenerative joint disease of the wrists based on a June 13, 2011 claim. [Tr. 197].[3] VA records contain opinions from Laurie

---

[3] The Court notes that the record includes two decision letters, three pages total, from the VA that appear to be incomplete and the pages out of order. [Tr. 196-98]. The first letter is dated

Elliott, CFNP, Lorie Bateman, PA-C, and a VA compensation and pension examination completed by Regina Kay Jones, NP. All three medical sources opined on the Plaintiff's impairments and their limiting effect.

Ms. Elliot is the Plaintiff's treating nurse practitioner and authored several opinions in this case. On May 13, 2011, Ms. Elliot completed a questionnaire. [Tr. 618-19]. Therein, the Plaintiff's impairments were described as chronic, service connected degenerative disc disease of the spine, chronic plantar fasciitis, right flat food condition, and functional low back and lower extremity pain and muscle spasms – all of which were treated by nonsteroidal anti-inflammatory and skeletal muscle relaxants. [Tr. 618]. Ms. Elliot explained that the Plaintiff's "conditions may be stabilized but are expected to be marked by recurrent exacerbations." [Id.]. She limited the Plaintiff to lifting and pulling no more than 20 pounds and no squatting, climbing, or running. [Id.].

Ms. Elliot also wrote a letter on April 10, 2012, explaining that the Plaintiff suffers from a number of chronic conditions that have limited her ability to continue work duties. [Tr. 301-02]. The impairments included degenerative facet joint disease and degenerative disc disease of the lumbar spine, metatarsalgia and pes planus deformity, and osteoarthritis in the shoulders, neck, writs, and knees. [Tr. 301]. The letter states that these impairments affect the Plaintiff daily,

---

April 20, 2013, and deals with a claim for service connected benefits received on June 13, 2011. [Tr. 196]. The second letter is dated May 11, 2010, and deals with a claim for service connected benefits received on October 1, 2009. [197]. The third page within the record, which follows the May 11, 2010 letter, contains the individual ratings assigned to each of the Plaintiff's impairments which make up the Plaintiff's 90% disability rating, but it does not appear to be a part of the May 11, 2010 letter. This third page contains a "3" on the page's header, indicating that it is the third page of one of the letters, but neither letter contains a page "2." However, this third page states that the rating decision is based on the Plaintiff's June 13, 2011 claim. [Tr. 198]. Therefore, the third page appears to be a part of the April 20, 2013 letter rather than the May 11, 2010 letter as observed by the ALJ. [Tr. 27].

causing chronic pain that radiates to her lower extremities, stiffness, and limits her range of motion. [*Id.*]. In addition, the Plaintiff cannot stand for extended periods of time without feeling pain in her feet and ankles, and the Plaintiff's hand swell and become painful. [*Id.*]. Pain medication was noted to provide some relief, but did not cure the Plaintiff's impairments or completely relieve her pain. [*Id.*]. Ms. Elliot limited the Plaintiff to lifting no more than 20-25 pounds and must avoid repetitive overhead work, bending or squatting other than on rare occasions, standing more than 30-60 minutes at a time, and ambulating for extended periods of time. [Tr. 302].

Finally, Ms. Elliot completed an undated questionnaire in connection with the Family and Medical Leave Act. [Tr. 303-04]. Ms. Elliot explained that due to the Plaintiff's chronic conditions and duties associated with the performance of her job as a mail handler, the Plaintiff experienced exacerbations to her back and foot pain which is expected to preclude her from continuing her current work duties without frequent time-off. [Tr. 304]. Ms. Elliot specifically opined that the Plaintiff would need up to two to three days off per week to recuperate from exacerbations and that at most, she could work six hours, zero to three days per week, for an indefinite amount of time. [*Id.*]. Ms. Elliot also estimated that the Plaintiff would experience exacerbations two to three times per week with episodes lasting up to one day. [*Id.*].

Ms. Bateman provided treatment to the Plaintiff on a biannual basis. [Tr. 645]. She completed a form entitled "Medical Opinion Re: Ability to Do Physical Activities" on March 3, 2014, wherein she responded to short-answer and multiple choice questions about the Plaintiff's impairments. [Tr. 645-47]. Ms. Bateman opined that the Plaintiff could sit for one hour and stand for two hours continuously and sit for four hours and stand for two hours total in an eight-hour workday, she required a sit-stand at will option and the ability to take unscheduled breaks every hour, and she would need to elevate her legs with prolonged sitting at least 60% of the day if the

8

Plaintiff had a sedentary job. In addition, the Plaintiff could never lift or carry any amount of weight, bend, twist, stoop, or climb stairs or ladders. [Tr. 646-47]. The Plaintiff's ability to use her hands for repetitive reaching, handling, or fingering was significantly limited as Ms. Bateman opined that the Plaintiff could use her hands only 10% of the time during an eight-hour workday with regard to repetitive activities. [Tr. 646]. Ms. Bateman concluded that the Plaintiff would be absent from work more than twice a month. [Tr. 647].

Lastly, on April 25, 2013, a VA compensation and pension examination was conducted by Regina Kay Jones, NP. [Tr. 314-407]. The compensation and pension examination consisted of nine Disability Benefits Questionnaires with each questionnaire opining on a different impairment and the impairment's severity and functional effect. [*Id.*]. The impairments evaluated included hypertension, pes planus (flatfoot), knees and lower legs, neck and cervical spine, shoulders and arms, wrists, peripheral nerve conditions, and back and thoracic spine. [*Id.*]. Based upon examination findings, Ms. Jones opined that the Plaintiff could perform mild physical labor with the following restrictions: the Plaintiff could lift and carry up to 20 pounds, must avoid hot environments, and cannot tolerate prolonged periods of standing, walking, pushing, pulling, lifting, or repetitive overhead motions. [Tr. 317-18, 325, 349, 371, 380, 407, 454, 461, 483, 504, 512, 537]. Additionally, the Plaintiff would need to change potions at regular intervals. [Tr. 335]. Ms. Jones concluded that the Plaintiff could perform sedentary work but that repetitive neck motions must be precluded. [Tr. 317, 335, 349, 362, 380, 407, 461, 471, 483, 495, 504, 512, 537].

## V.     POSITIONS OF THE PARTIES

The Plaintiff raises two assignments of error on appeal. First, the Plaintiff contends that the ALJ failed to properly evaluate the opinions of Ms. Elliott, Ms. Bateman, and Ms. Jones, as well as the Plaintiff's disability rating issued by the VA. [Doc. 16 at 3-11]. Second, the Plaintiff

9

asserts that the ALJ failed to considered the impact of the Plaintiff non-severe mental impairments on her RFC. [*Id.* at 12-14].

The Commissioner responds that the ALJ properly evaluated opinion evidence consistent with agency rules and regulations, articulated sufficient reasons for the weight given to each opinion, and maintains that substantial evidence supports the ALJ's determination. [Doc. 18 at 6-14]. Additionally, the Commissioner submits that the ALJ properly evaluated the Plaintiff's non-severe mental impairments which did not have an effect on the Plaintiff's RFC and contends that the Plaintiff has failed to set forth sufficient evidence demonstrating otherwise. [*Id.* at 14-16].

## VI. ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

### A. Opinion Evidence

The primary contention asserted by the Plaintiff is that the ALJ erred by failing to provide "good/specific/supported reasons" for declining to adopt the opinions of the Plaintiff's "treating sources" pursuant to 20 C.F.R. § 404.1527(c). [Doc. 16 at 4, 8]. Before addressing the more specific allegations of error as to each opinion, the Court reviews the standard by which the ALJ must considered the challenged opinions.

First, the Court observes that Ms. Elliot, Ms. Bateman, and Ms. Jones are considered "other sources" under the regulations and as an "other source," their opinions are not subject to the "good reason" requirement enumerated in 20 C.F.R. § 404.1527(c)(2). "Other sources" include medical sources such as nurse practitioners and physicians' assistance which are not "acceptable medical sources," *e.g.*, a licensed physician, under the regulations. 20 C.F.R. § 404.1513(a), -(d). While "other sources" may provide evidence as to the severity of a claimant's impairment as well as the

10

effects the impairment has on the claimant's ability to work, *id.* at § 404.1513(d), they "cannot establish the existence of a disability," *Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 398 (6th Cir. 2014). Accordingly, opinions rendered by "other sources" are not subject to any special degree of deference. *Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 248-49 (6th Cir. 2015) ("The opinion of a 'non-acceptable medical source' is not entitled to any particular weight or deference— the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record.") (citations omitted).

The Plaintiff's reference to "treating source" and "good reason" [Doc. 16 at 4, 8] are legal terms of art that are not applicable to weighing "other source" evidence. A "treating source," in addition to being one who provides, or has provided, medical treatment or evaluation to a claimant on an ongoing basis, must be a "physician, psychologist, *or other acceptable medical source*." 20 C.F.R. § 404.1502 (emphasis added). As a nurse practitioner and physician assistant, Ms. Elliot, Ms. Bateman, and Ms. Jones do not qualify as a "treating source." *See Hatfield v. Astrue*, No. 3:07-CV-242, 2008 WL 2437673, at *2 (E.D. Tenn. June 13, 2008) (holding that opinions rendered by "other sources" are "not given the same controlling weight as a 'treating source.'"). In addition, "good reason" need only be given in explaining the weight assigned to an opinion from a "treating source." 20 C.F.R. § 416.927(c)(2); *see also Engebrecht*, 572 F. App'x at 399 ("As an 'other source' opinion, Hastings' opinion is not entitled to controlling weight, nor is the ALJ required to give reasons for failing to assign it controlling weight, as that requirement only applies to treating sources.") (citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010)).

Second, the Court observes that opinions from "other sources" are instead assessed pursuant to Social Security Ruling 06-03p which requires that an ALJ consider "other source" opinion and should generally explain the weight given to the opinion. 2006 WL 2329939, *6

11

(Aug. 9, 2006). The Ruling explains that the factors listed in 20 C.F.R. 404.1527(c)(1)-(6), which are used for evaluating medical opinions from "acceptable medical sources," remain guiding principles for determining the weight that should be given to opinions from "other sources." *Id.* at *3. These factors include: the frequency of examination, the consistency of the opinion with other evidence, the amount of relevant evidence supporting the opinion, the source's area of expertise, and any other relevant factor that supports or refutes the opinion. *Id.* at 4-5. However, not every factor need be weighed; the particular facts of each case will dictate which factors are appropriate for consideration in order to properly evaluate the opinion at hand. *Id.* at 5.

With regard to Ms. Elliott's opinions, the Court finds that substantial evidence supports the ALJ's consideration of the opinions. The ALJ properly recognized [Tr. 28] that Ms. Elliott's finding that the Plaintiff is totally and permanently disabled is an issue reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d)(3) (opinions on whether a claimant is disabled "will not be given any special significance" because whether an individual meets the statutory definition of disability is an issue strictly reserved for the Commissioner). The ALJ then assigned "little weight" to the opinions because "the objective medical findings and the other objective medical evidence do not support such restrictive limitations." [Tr. 28]. This other objective evidence included the Plaintiff's reports that the usage of shoe inserts provided good control of pain and swelling caused by her mild flatfoot and mild pes planus. [Tr. 26, 430, 539]. In addition, treatment records documented good tiptoe and heel walk, negative for straight leg raise testing to 90 degrees, and limited flexion of 100 degrees in both knees. [Tr. 26, 430, 540]. Further, the ALJ relied on the Plaintiff's reports that she walks daily and performed other daily living activities including shopping, cleaning, and cooking among other things. [Tr. 28, 254-56, 539]. The ALJ also explained that the overhead restrictions appeared to be based on the Plaintiff's subjective

12

complaints. [Tr. 26, 370].

The Court finds that this evidence provided a reasonable basis for the ALJ's conclusion that the objective evidence of record did not support the opinions, including that the Plaintiff could not stand for more than 30 to 60 minutes at a time, ambulate for extended periods, or bend or squat beyond rare occasions. Moreover, the Court notes that the ALJ did not completely reject the limitations opined by Ms. Elliott. The ALJ credited the restriction that the Plaintiff could lift up to 20 pounds. [Tr. 28]. An ability to lift up to 20 pounds is consistent with an ability to perform a range of light work. 20 C.F.R. § 404.1567(b).

As to Ms. Bateman's opinions, substantial evidence likewise supports the ALJ's assignment of "little weight" to her opinions. [Tr. 27]. In addition to finding that the same objective evidence discussed above did not support Ms. Bateman's opinions, the ALJ found the opinions were not supported by Ms. Bateman's own medical findings. [*Id.*]. Indeed, at the time Ms. Bateman authored her January 2014 form opinion, which reflected limitations caused by the Plaintiff's low back pain, she had only seen the Plaintiff on one occasion for a "well woman examination." [Tr. 421-23]. The purpose of the examination, as well as examination findings, do not support or explain any of the limitations opined in January 2014. *See Hernandez v. Comm'r of Soc. Sec.*, No. 15-1875, 2016 WL 1055828, at *4 (6th Cir. Mar. 17, 2016) (explaining that the Sixth Circuit has "previously declined to give significant weight to rudimentary indications that lack an accompanying explanation" such as "check-box" forms that are not accompanied by sufficient explanation).

At the time Ms. Bateman completed her second form opinion in July 2014, which reflected identical findings, she had seen the Plaintiff on one additional occasion on April 1, 2014. [Tr. 409-13]. Although the Plaintiff complained that her back was sore and she exhibited tenderness upon

13

examination, the Plaintiff reported her back pain was due to walking 60 minutes the day before. [Tr. 410, 412]. Moreover, the Plaintiff stated she had no radicular pain, numbness, or tingling in her lower extremities, and upon examination, the Plaintiff's gait was normal and she exhibited full strength in her upper and lower extremities. [*Id.*]. Ms. Bateman's treatment notes fail to support her findings that the Plaintiff can only sit for four hours, stand and walk for two hours, and use her hands and fingers for only 10% of the workday. Moreover, Ms. Bateman noted that the Plaintiff experienced flair-ups in her back one to two times per month [Tr. 410] which fails to explain why the Plaintiff would miss more than two workdays per month. *See Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 525 (6th Cir. 2014) ("[a] case cannot be decided in reliance on a[n] [] opinion without some reasonable support for the opinion") (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *1 (July 2, 1996)). The ALJ reasonably concluded that Ms. Bateman's treatment notes fail to substantiate the limitations assessed.

The ALJ also assigned "little weight" to Ms. Jones's opinion that the Plaintiff could only perform sedentary work. [Tr. 27]. The ALJ found that the opinion appeared overly reliant on the Plaintiff's subjective complaints and not supported by the evidence of record. [*Id.*]. The Plaintiff counters that Ms. Jones's opinion was based primarily on examinations findings which included, for instance, restricted bilateral knee flexion and tenderness to palpation, restricted range of motion of the cervical and lumbar spine, decreased sensation to light touch and paresthesias involving the lower and upper extremities. [Doc. 16 at 10-11]. The Court agrees and finds that the ALJ failed to cite any support to the record for concluding that Ms. Jones overly relied on the Plaintiff's self-report.

The compensation and pension examination was comprehensive in nature and included various diagnostic techniques for assessing the individual severity and functional effect of the

14

Plaintiff's hypertension, pes planus (flatfoot), knees and lower legs, neck and cervical spine, shoulders and arms, wrists, peripheral nerve conditions, and back and thoracic spine. [Tr. 314-407]. A review of the examination records does not clearly demonstrate that the limitations assessed were primarily based upon the Plaintiff's subjective allegation in lieu of objective evidence or that the Plaintiff's complaints were disproportionate to examination findings. The failure to cite where in the record Ms. Jones's examination findings "appeared to be overly reliant on the [Plaintiff's] subjective complaints" [Tr. 27] fails to substantiate the ALJ's assignment of "little weight" to Ms. Jones's opinion.

Finally, as to the VA's 90% disability rating, the ALJ also assigned "little weight" to the rating because "the VA and Social Security Administration (SSA) have different criteria in establishing disability." [*Id.*]. The Plaintiff argues that the ALJ's explanation for rejecting the disability rating was inadequate. [Doc. 16 at 9]. The Commissioner argues that the ALJ is not bound by the VA disability rating, nor was the rating in this case entitled to any special weight as the record did not contain a copy of the VA's decision detailing the evidence considered or the reasons for the numeric disability rating. [Doc. 18 at 13].

The Court observes that evidence of an impairment may include "[d]ecisions by any governmental or nongovernmental agency about whether [an individual is] disabled." 20 C.F.R. § 404.1512(b)(1)(v). However, another agency's decision is not determinative of disability under the Social Security Act, because that agency's decision is based on its own rules, whereas a disability claim filed pursuant to the Social Security Act is assessed by social security law. 20 C.F.R. § 404.1504; *see* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *6 ("[B]ecause other agencies may apply different rules and standards than we do for determining whether an individual is disabled, this may limit the relevance of a determination of disability made by another agency.").

Nonetheless, "[e]vidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *6.

The Sixth Circuit Court of Appeals has "not specified the weight such a determination should carry when determining social security disability eligibility." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 510 (6th Cir. 2013) (citation omitted). The Court instructed, however, that a VA disability rating "is entitled to consideration" but "is only one factor to be considered in making a social security disability finding." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 510-11 (6th Cir. 2013). "Regardless of the weight afforded, an ALJ 'should explain the consideration given to these decisions in the notice of decision.'" *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 388 (6th Cir. Dec. 13, 2013) (quoting Soc. Sec. Rul. 06-03p 2006 WL 2329939 at *6).

In this case, while the ALJ properly observed that the Social Security Administration and VA use different criteria to establish disability, the Court finds the distinction, without more, an insufficient basis to reject the Plaintiff's disability rating. The ALJ's reasoning says nothing about the rating's supportability, the medical evidence considered, or the reasons for the rating's decision. If the difference in criteria used by the VA justified rejection of the disability rating, Social Security Ruling 06-03p and Sixth Circuit caselaw would have no practical effect in requiring that disability decision rendered by other agencies be considered.

While the Court agrees with the Commissioner that a VA disability rating is not entitled to any special deference where the record is silent as to reasons for the particular rating, *see Lawson v. Colvin*, No. 3:15-CV-119-PLR-CCS, 2015 WL 9942593, at *5 (E.D. Tenn. Dec. 30, 2015) (upholding the ALJ's explanation "that the rating was of limited evidentiary value where there is

16

a lack of supporting evidence explaining how the VA arrived at its conclusion.") *adopted by* No. 3:15-CV-119-PLR-CCS, 2016 WL 347679 (E.D. Tenn. Jan. 28, 2016), the Court finds that the compensation and pension examination appears to have been conducted for the purpose of evaluating the Plaintiff's claim for service connected disability benefits. The VA decision letter issuing the Plaintiff's 90% disability rating states that the decision is based on a June 13, 2011 claim for benefits. [Tr. 198]. Records from Ms. Jones's compensation and pension examination indicate that information provided on the Disability Benefits Questionnaires would be considered in the evaluation of the Plaintiff's June 13, 2011 claim. [Tr. 391-92]. Therefore, the ALJ's failure to properly evaluate Ms. Jones's opinion also gives rise to the need to reconsider the Plaintiff's disability rating.

Accordingly, the Plaintiff's allegation of error as to Ms. Jones's opinion and the VA disability rating is well-taken. The Court orders that this case be remanded to the ALJ to reconsider Ms. Jones's opinion and the VA disability rating. The ALJ shall explain his consideration of the opinion and disability rating consistent with Social Security Ruling 06-03p.

### B.  Non-Severe Mental Impairments and RFC

The Plaintiff also argues that the ALJ erred in his RFC determination by failing to consider the effects of the Plaintiff's non-severe mental impairments.

At step two of the sequential evaluation, the ALJ found that the Plaintiff's "anxiety does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is [] therefore non-severe." [Tr. 24]. The ALJ considered the four broad functional areas knowns as the "paragraph B" criteria in making his finding. [Tr. 24-25]. The ALJ observed that the Plaintiff had no more than mild limitations in the areas of daily living activities, social functioning, and concentration, persistence, or pace. [Tr. 24]. The ALJ noted that the Plaintiff

17

received mental health treatment from the VA but that a global assessment of functioning score of 70 indicated only mild symptoms and that the Plaintiff had scored a zero on a depression screening test. [*Id.*]. The ALJ also credited the opinions of non-examining state agency physicians who opined that the Plaintiff's mental impairments were non-severe. [Tr. 25].

The Plaintiff argues that although her mental impairments were found non-severe, the ALJ was still required to consider their functional effect on the Plaintiff's RFC. [Doc. 16 at 12]. The Plaintiff asserts that even a mild impairment still has some limiting effect. [*Id.*]. The Commissioner counters that the Plaintiff does not demonstrate how her anxiety imposed significant work-related limitations and that the medical evidence indicates no limiting effect. [Doc. 18 at 14-15].

The Court observes that the "paragraph B" criteria used at steps two and three is not an RFC assessment. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00.A. A claimant's RFC is formulated at steps four and five, which require a more detailed assessment of the functions discussed under the "paragraphs B" criteria. Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *4 (July 2, 1996). Therefore, a finding by the ALJ that the Plaintiff has mild limitations in the areas of daily living activities, social functioning, and concentration, persistence, or pace, does not necessarily mean that the Plaintiff will have corresponding limitations with regard to her RFC. *See Pinkard v. Comm'r of Soc. Sec. Admin.*, No. 1:13CV1339, 2014 WL 3389206, at *10 (N.D. Ohio July 9, 2014) (finding that "the ALJ does not have to include paragraph B finding in his RFC finding" and concluding that "the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in not including a 'moderate limitation in concentration, persistence, and pace' in his residual functional capacity finding at steps four and five"). However, the ALJ provided no

18

discussion in the RFC portion of the decision as to whether the Plaintiff's mild mental limitations caused by the Plaintiff's anxiety produced work-related limitations. [Tr. 25-28].

Unfortunately, the ALJ's well-reasoned analysis at step two provides no indication to the Court whether the Plaintiff's mild mental limitations had some or no effect on the Plaintiff's ability to perform light work. *See Katona v. Comm'r of Soc. Sec.*, No. 14-CV-10417, 2015 WL 871617, at *7 (E.D. Mich. Feb. 27, 2015) ("The ALJ's analysis of Plaintiff's mental impairments at Step Two, while otherwise thorough, does not provide the Court with a basis to infer that Plaintiff's mental impairments, either singly or in combination with Plaintiff's other impairments, generated no work-place restrictions or limitations."); *Johnson v. Colvin*, No. 3:13cv00301, 2014 WL 6603376, at *8 (S.D. Ohio Nov.19, 2014) ("Assuming [the step 2 analysis] suffices to support the ALJ's conclusion that Plaintiff does not have a severe mental impairment, this does not demonstrate that the ALJ considered Plaintiff's non-severe mental impairments at step four as required by law.") adopted by No. 3:13cv00301, 2014 WL 7015188, at *1 (S.D. Ohio Dec.10, 2014).

Although the Plaintiff's anxiety is non-severe, the definition of a non-severe impairment suggests that the impairment may still impose a limitation on the Plaintiff's ability to perform light work. *See* 20 C.F.R. § 404.1521(a) (defining a non-severe impairment as an impairment that "does not *significantly* limit [a claimant's] physical or mental ability to do basic work activities") (emphasis added). Moreover, the ALJ was required to consider both severe and non-severe impairments in shaping the Plaintiff's RFC and the failure to do is not harmless. *See* Murray v. Colvin, No. 3:12-0410, 2014 WL 5323061, at *12 (M.D. Tenn. Oct. 16, 2014) (holding that an ALJ must consider both severe and non-severe impairments at the remaining steps of the sequential evaluation, and if an impairment does not effect a claimant's RFC, such a finding must be

19

articulated by the ALJ and may not be inferred by the court) *adopted by* No. 3:12-CV-00410, 2014 WL 5824539, at *1 (M.D. Tenn. Nov. 7, 2014). Therefore, while the Commissioner makes a compelling argument that the medical evidence does not substantiate the Plaintiff's allegations that her anxiety caused work-related limitations, the ALJ is tasked with weighing the evidence in the first instance, not the Court.

Accordingly, the Plaintiff's allegation of error in this regard is well-taken and the case will be remanded to the ALJ to provide a full discussion as to what extent, if any, the Plaintiff's non-severe mental impairments have on her RFC.

## VII.   CONCLUSION

Based upon the foregoing, it is hereby **ORDERED** that the Plaintiff's Motion for Summary Judgment [**Doc. 15**] is **GRANTED in part and DENIED in part**, and the Defendant's Motion for Summary Judgment [**Doc. 17**] is **GRANTED in part and DENIED in part**. Upon remand, the ALJ shall:

1. Reconsider Ms. Jones's opinion in connection to the compensation and pension examination consistent with Social Security Ruling 06-03p;

2. Reconsider the VA disability rating and explain his consideration of the rating consistent with Social Security Ruling 06-03p; and

3. Provide a full discussion as to what extent, if any, the Plaintiff's non-severe mental impairments have upon her RFC.

**IT IS SO ORDERED.**

ENTER:

　　　s/ C. Clifford Shirley, Jr.　
United States Magistrate Judge